The DALLAS MORNING NEWS COMPANY, Appellant,

v.

BOARD OF TRUSTEES OF DALLAS INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 05–92–01469–CV.

Court of Appeals of Texas, Dallas.

Sept. 10, 1993.

Rehearing Denied Oct. 12, 1993.

Paul C. Walter and Kurt W. Meaders, Dallas, for appellant.

Donald W. Hicks, Sr. and Joe Nathan Wright, Dallas, for appellee.

Before BAKER, CHAPMAN and BARBER, JJ.

## OPINION

BAKER, Justice.

This is a suit for declaratory judgment brought by the Dallas Morning News Company against the Board of Trustees of Dallas Independent School District for interpretation of the Texas Open Meetings Act.[1] The trial court held that a closed meeting involving a representative of the Texas Education Agency and a quorum of the Board did not violate the Act. The News contends the trial court did not properly interpret the Act. The News argues the trial court either erred in failing to make certain fact findings or in making certain fact findings. We affirm the trial court's judgment.

---

1. Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Vernon Pamph.1993). All future references to the Act are to this article unless otherwise indicated.

## BACKGROUND FACTS

For some time before November 1990, the Texas Education Agency, as the supervisory agency for all public school districts, reviewed the Dallas Independent School District for accreditation purposes. A T.E.A. representative scheduled a meeting with the Board for November 14, 1990. The purpose of the meeting was to present a preliminary* report to the Board on the District's accreditation.

The News learned of the meeting some weeks before November 14. The News made written demand on the Board for an open meeting. The Board did not respond to the demand. The News sued to secure a temporary restraining order to prevent the Board from holding a closed meeting with the T.E.A. representative. The trial court denied the News any relief.

The Board held the meeting on November 14. A T.E.A. representative requested all members of the press and public to leave the meeting. A reporter for the News was at the meeting. He requested that the meeting be open under the Act. The T.E.A. representative asked the News reporter and other members of the media to leave, and they did so.

The News later amended its suit to seek a declaratory judgment that the November 14 meeting violated the Act. The News also sought a permanent injunction to enjoin the Board from future infractions of the Act. After hearing evidence, the trial court denied the News any relief and entered a judgment for the Board.

The trial court filed extensive findings of fact and conclusions of law. In essence, the trial court found that no verbal exchange occurred during the November 14 meeting between a quorum of the Board or between a quorum of the Board and any other person about any issue within the Board's jurisdiction or about any public business. The trial court concluded that the November 14 meeting did not fall within the meaning of "meeting" as defined by the Act because no verbal exchange occurred between a quorum of the Board or between a quorum of the Board and any other person.

## THE NEWS'S POINTS OF ERROR

In two points of error, the News contends:

1. The trial court erred in rendering judgment for the Board because the Board violated the Act in closing the November 14 meeting. The News contends the trial court erred in its conclusion of law that the November 14 meeting was not subject to the Act.

2. The trial court erred in certain of its findings of fact. The News contends the trial court erred in not making findings of fact established by stipulations and in making findings of fact that supported the trial court's conclusion that no meeting occurred within the meaning of the Act.

## APPLICABLE LAW

### A. The Act—Pre 1987 Amendments

Before the legislature amended the Act in 1987, the Act provided:

"Meeting" means any deliberation between a quorum of members of a governmental body at which any public business or public policy over which the governmental body has supervision or control is discussed or considered, or at which any formal action is taken.

Act of April 3, 1973, 63d Leg., R.S., ch. 31, § 1, 1973 Tex.Gen.Laws 45, *amended by* Act of May 31, 1989, 70th Leg., R.S., ch. 549, § 1, 1973 Tex.Gen.Laws 2211.

The Act defined "deliberation" as:

a verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision on any public business.

*Id.* Thus, before 1987, a governmental body held a meeting subject to the Act whenever a quorum of members of the body was present and the members took any formal action or engaged in a verbal exchange among themselves about the public business or policy over which the body had jurisdiction. Conversely, however, the members of a governmental body could meet privately to receive information from and ask questions of their employees or third parties if they did not discuss any public business among them-

selves. *See Pea Picker, Inc. v. Reagan*, 632 S.W.2d 674, 677 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *see also* Op.Tex.Att'y Gen. No. JM–248 at 2 (1984).

### B. The Act—Post 1987 Amendments

In 1987, the legislature amended the definitions of "meeting" and "deliberation." The Act now states:

"Meeting" means any deliberation between a quorum of members of a governmental body, or between a quorum of members of a governmental body and any other person, at which any public business or public policy over which the governmental body has supervision or control is discussed or considered, or at which any formal action is taken.

Art. 6252–17, § 1(a). The Act now defines "deliberation" as:

A verbal exchange during a meeting between a quorum of members of a governmental body, or between a quorum of members of a governmental body and any other person, concerning any issue within the jurisdiction of the governmental body or any public business.

Art. 6252–17, § 1(b).

Another 1987 amendment exempted a conference between a quorum of the members of a governmental body and an employee or employees when the conference is for the sole purpose of receiving information from the employee or employees or to ask questions of the employee or employees. *See* Art. 6252–17, § 2(r).

In an opinion after the 1987 amendments, the Attorney General determined that a governmental body meets subject to the Act when a quorum of members is present and meets with a third party about the public business or policy over which the body has jurisdiction. *See* Op.Tex.Att'y Gen. No. DM–191 at 3 (1992). The Attorney General concluded that the addition of section 2(r) provided evidence that the legislature intended the amendments to include briefing sessions in the definition of meeting. The Attorney General held that because section 2(r) provides a specific exception for briefing sessions between the governmental body and its employees, the addition of section 2(r) was

unnecessary if the legislation did not intend the amendments to sections 1(a) and 1(b) to make the definition of "meeting" encompass briefing sessions.

### STATUTORY CONSTRUCTION

■ We construe a statute to give effect to the legislative intent. *Harris County Dist. Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 574 (Tex.1971); *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 921 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). When the wording of a statute is ambiguous, we consult statutory construction rules and related legislative history. *Matrix, Inc. v. Provident Am. Ins. Co.*, 658 S.W.2d 665, 667 (Tex. App.—Dallas 1983, no writ).

■ We review an act as a whole. We do not give a statute a meaning that conflicts with other provisions if we can reasonably harmonize the provisions. *Estate of Padilla v. Charter Oaks*, 843 S.W.2d 196, 198 (Tex. App.—Dallas 1992, writ denied). We do not interpret a statute in a manner that will lead to a foolish or absurd result when another alternative is available. *Estate of Padilla*, 843 S.W.2d at 199.

■ In construing statutes, we should consider Attorney General opinions. *See Hancock v. State Bd. of Ins.*, 797 S.W.2d 379, 381 (Tex.App.—Austin 1990, no writ). An Attorney General opinion does not bind a reviewing court. *Reed v. Department of Licensing & Regulation*, 820 S.W.2d 1, 3 (Tex.App.—Austin 1991, no writ). However, when the meaning of a statutory provision is unclear, in doubt, or ambiguous, we must give weight to the interpretation placed upon the provision by the agency. *Reed*, 820 S.W.2d at 3.

■ However, if the disputed statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983); *McCulloch*, 696 S.W.2d at 921. Words in statutes have their ordinary meaning unless the statute defines them or they are connected with and used with reference to a particular trade or subject matter or are a term of art. Tex.Gov't Code Ann. § 312.002 (Vernon 1988); *Hop-*

kins v. Spring Indep. Sch. Dist., 736 S.W.2d 617, 619 (Tex.1987); Estate of Padilla, 843 S.W.2d at 198.

## THE PARTIES' CONTENTIONS

### A. The News

The News argues that the trial court erred in concluding that "because no verbal exchange occurred, the November meeting did not fall within the Act." The News argues that the trial court's conclusion requiring an element of speech by a Board member as a prerequisite for finding a verbal exchange, deliberation, or meeting under the Act is erroneous as a matter of law. The News takes the position that during a briefing session the Board's own silence is irrelevant because the third party's discussion of public business falls within the definition of "deliberation" under the 1987 amendments.

### B. The Board

The Board contends that because the T.E.A. called and controlled the meeting and that the Board did not call it, the Board was cloaked with the immunity of the T.E.A.'s statutory right to close to the public a briefing session that T.E.A. holds with a board. See TEX.EDUC.CODE ANN. § 21.757(a)(1) (Vernon Supp.1993). Alternatively, the Board contends the evidence supports the trial court's finding that there was no verbal exchange during the meeting between Board members or between the Board and the T.E.A. representatives. The Board concludes that these findings support the trial court's conclusions of law that the meeting was not subject to the Act.

## APPLICABLE LAW

■■■ We review conclusions of law as a matter of law, not for sufficiency of the evidence. See First Nat'l Bank v. Kinabrew, 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). We have the duty independently to evaluate conclusions of law. MJR Corp. v. B & B Vending Co., 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied). We review the legal conclusions drawn from the facts found to determine their correctness. Mercer v. Bludworth, 715

S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), overruled on other grounds, Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 894 (Tex.1991).

## APPLICATION OF LAW TO THE FACTS

In its first and supplemental points of error, the News contends the trial court's conclusion of law that the Act did not apply to the briefing session is erroneous as a matter of law. The News argues the trial court incorrectly interpreted the 1987 amendments to the Act.

■■ The News relies principally upon Attorney General Opinion DM–191. The News asserts that the facts in DM–191 show the Houston Metro Board reviewed a third party's proposals by listening to the presentations. The News asserts that the Metro Board members did not discuss the proposals among themselves and did not make any governmental decisions. The News contends the briefing session in DM–191 is factually similar to the briefing session in this case because in both instances the board members did not speak to the third parties but merely listened to their presentations.

The News concludes that the Attorney General determined in DM–191 that the 1987 amendments to the Act prohibited closed briefing sessions. Therefore, whether the Board is silent is irrelevant because the third party's discussion of public business falls within the 1987 amendments to the Act. We disagree.

DM–191 shows that the Attorney General was reviewing his previous opinion No. DM–17, which issued in April 1991. In DM–17, the Houston Metro Board met in private to review bids for a proposed rail system. Representatives of the third parties making their bids appeared at this private meeting. It appears that Board members asked questions of the third parties who addressed the Board in the briefing session. The opinion stated that a quorum of a governmental body may assemble as an audience at the meeting of another entity without being subject to the requirements of the Act.

DM–17 also stated that in asking questions of the persons who addressed the Board in a briefing session, Board members must avoid engaging in deliberations by addressing remarks intended for one another to persons providing the briefing. DM–17 concluded that a board is not subject to the Act if it meets in a closed session to receive information and ask questions of staff and companies that responded to its request for proposals for a proposed rail system and did not engage in any discussion of any matter of public business among Board members. *See* Op.Tex.Att'y Gen. No. DM–17 at 4 (1991).

In DM–191, the Attorney General reviewed DM–17 at the request of the Chair of the Transportation Committee of the Texas House of Representatives. The Attorney General determined, based upon the 1987 amendments, to overrule DM–17. In doing so, the Attorney General concluded that after the 1987 amendments, a meeting covered by the Act no longer must involve deliberations between members of a governmental body when a quorum of members is present. The opinion held, rather, a governmental body also meets subject to the Act when a quorum of members is present and meets with a third party about public business or policy over which the body has jurisdiction. Although DM–191 quotes the 1987 amendments to the Act and discusses them, we conclude the opinion erroneously construes the amendments to reach its conclusion.

 Neither party to this controversy contends the 1987 amendments to the Act are ambiguous. Accordingly, extrinsic aids and rules of statutory construction are inappropriate. *Cail,* 660 S.W.2d at 815. We should enforce the statute as interpreted by its express language. *Cail,* 660 S.W.2d at 815. When the legislature does not expressly define statutory terms, we give the words their ordinary meaning. *Estate of Padilla,* 843 S.W.2d at 198.

Crucial to the determination of the meaning of the 1987 amendments is the statutory definition of "deliberation." The legislature defines "deliberation" as a verbal exchange during a meeting between a quorum of members of a governmental body, or between a quorum of members of a governmental body and any other person, concerning any issue within the jurisdiction of the governmental body or any public business. *See* art. 6252–17, § 1(b) of the Act.

A verbal exchange is crucial to the determination of deliberations and in turn what is a meeting under the Act. The legislature chose not to define verbal exchange. We give both words their ordinary meaning. *Estate of Padilla,* 843 S.W.2d at 198.

"Verbal" means "of or relating to words, consisting in or having to do with words, spoken rather than written words." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2542 (1981). "Exchange" means the act of giving or taking one thing in return for another as if equivalent, reciprocal, giving and receiving, such as words. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 792 (1981). Given their plain meaning, the words "verbal exchange" means a reciprocal giving and receiving of spoken words.

Attorney General Opinion DM–191 completely ignores the import of the phrase "verbal exchange" within the definition of deliberation. The News relies on DM–191 to conclude that even if the Board members remain silent during a briefing session with third parties, the Act still applies. In our view, this conclusion is without foundation in the statute. We conclude that both the Attorney General and the News incorrectly interpret the 1987 amendments.

Based upon the plain meaning of the 1987 amendment of section 1(b) of the Act, a briefing session with third parties where the public is excluded and the governmental body does not engage in a verbal exchange with representatives of the third party or engage in verbal exchange between its own members about the issue within its jurisdiction or any other public business, is not a deliberation as defined by the Act. Therefore, there is not a meeting as defined by the Act. *See* art. 6252–17, §§ 2(a), (b).

Thus, if the record sustains the trial court's findings of fact, then the trial court's conclusion of law is not erroneous.

## THE ISSUE

The issue is whether the record supports the trial court's findings of fact that no verbal exchange occurred between any member of the Board and a T.E.A. representative during the briefing session.

### A. Legal Sufficiency of the Evidence

We review a trial court's findings of fact using the same standards we apply in reviewing the legal sufficiency of the evidence supporting a jury's answers to jury questions. *Exxon Corp. v. Tidwell,* 816 S.W.2d 455, 459 (Tex.App.—Dallas 1991, writ granted). When we review a no evidence point, we consider only the evidence and inferences that tend to support the trial court's findings. We disregard all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.,* 750 S.W.2d 174, 175 (Tex.1988).

We sustain a no evidence point only when the record shows one or more of the following: (1) a complete absence of evidence of a vital fact; (2) the rules of evidence bar from our consideration the only evidence to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991).

### B. Findings of Facts and Conclusions of Law

After a trial court makes and files its original findings of fact and conclusions of law, any party may request additional or amended findings or conclusions. TEX. R.CIV.P. 298. The trial court shall file any additional or amended findings that are appropriate. TEX.R.CIV.P. 298. However, to complain on appeal of a trial court's failure to make additional or amended findings, a party must have made a timely request under rule 298. TEX.R.CIV.P. 298; *Kincaid v. Gulf Oil Corp.,* 675 S.W.2d 250, 255 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). A failure to make a request for amended or additional findings waives the right to complain on appeal. *Kincaid,* 675 S.W.2d at 255.

## THE NEWS'S FACTUAL CONTENTIONS

In its second point of error, the News contends the trial court erred by failing to find certain stipulations as fact. The News contends that the trial court erred in failing to make findings the News requested and that the facts the trial court made and used to reach its legal conclusion are without foundation in the record.

### A. The Failure to Find Stipulated Facts or Facts Requested by the News

After the trial court entered its findings of fact and conclusions of law, the News did not request amended or additional findings. We conclude the News waived its right to complain on appeal that the trial court erred because it did not find facts stipulated by the parties and did not find facts requested by the News. TEX.R.CIV.P. 298; *Kincaid,* 675 S.W.2d at 255.

### B. The News's Complaints on Facts Found by the Trial Court

The News complains of the following findings of fact:

5. On November 14, 1990, a quorum of the Board met with T.E.A.'s accreditation investigators pursuant to Tex.Educ.Code §§ 21.751–53.

5(f)(i). The November 14, 1990 exit report meeting was required and called by T.E.A.

5(f)(vi). The November 14, 1990 verbal exit report meeting is distinguished from a regularly called board meeting based on two (2) controlling factors, i.e. the meeting was called by T.E.A. and not the Board, and the T.E.A. representatives were the only persons allowed to speak.

5(g). The November 14, 1990 meeting was required under T.E.A.'s state-wide standard procedure to be conducted in a session closed to the public and press.

5(k)(ii). The T.E.A.'s November 14, 1990 agenda required discussion only by the T.E.A. representatives calling and conducting said verbal exit report meeting. The agenda was followed, and T.E.A. represen-

tatives were the only persons to speak throughout the entire meeting.

5($l$). No one from the District or the Board spoke or distributed any written material during any part of the November 14, 1990 verbal exit report meeting.

7. The accreditation investigators' verbal exit report meeting did not require discussion or deliberation by the Board or discourse by and between the T.E.A. and/or the Board and/or D.I.S.D. Administration staff or Board.

17. No public business was discussed or considered by and between the Board members or by and between the Board with T.E.A. or with D.I.S.D. Administration or staff at the November 14, 1990 exit interview.

18. No verbal exchange occurred during the November 14, 1990 exit interview between a quorum of the Board of Trustees attending the exit interview or between a quorum of said Board of Trustees and any other person concerning any issue within the jurisdiction of the Board of Trustees or any public business.

The News argues that it proved as a matter of law that a verbal exchange as defined in the Act occurred during the November 14 meeting because: (1) it proved that Board members spoke at the November 14 meeting to T.E.A. representatives; or (2) a verbal exchange as defined in the Act includes the sharing of information by a third party with a governmental body regardless of whether members of the governmental body sit silent. We disagree.

■ We have already held that under the 1987 amendments, a meeting such as that held by the Board on November 14, 1990, does not violate the Act so long as a quorum of the Board does not conduct a verbal exchange between themselves or with any other person about any issue within the jurisdiction of the government body or any public business. The remaining question is whether the News proved as a matter of law that one or more members of the Board engaged in a verbal exchange between themselves and

the T.E.A. representatives after the T.E.A. representatives closed the meeting.

■ The Act provides for both open and closed meetings. See art. 6252–17 § (2)(a). The News contends Yvonne Ewell and an unnamed male Board member spoke after the T.E.A. closed the meeting. Stipulation No. 13 states that before the session began, Yvonne Ewell, a member of the Board, asked Walter Chandler, a T.E.A. representative, a question about the format of the T.E.A. presentation. Larry Garcia, the T.E.A. representative who made the presentation, testified that he did not recall anyone from the Board speaking during his presentation. Garcia did recall there were comments at the beginning of the meeting made by a male member of the Board and that this member left before Garcia began his presentation.

Joe Garcia, the News reporter, testified Chandler told him to leave the meeting. Joe Garcia testified that no one on the Board objected to the T.E.A. closing the meeting while he was in the room. He said within two minutes after the T.E.A. closed the meeting to the press, three Board members left the meeting.

From this record the trial court could conclude that no verbal exchange occurred during the November 14, 1990 meeting between the Board and the T.E.A. representatives or between the Board among themselves.

Considering only the evidence and inferences that tend to support the trial court's findings and disregarding all evidence and inferences to the contrary, we conclude the trial court could have reached finding of fact eighteen. We overrule the News's second point of error.

We affirm the trial court's judgment.

CHAPMAN, J., dissents with opinion.

CHAPMAN, Justice, dissenting.

I respectfully dissent. I disagree with the majority's holding that no verbal exchange occurred at the November 14, 1990 meeting. Under the 1987 amendments to the Texas Open Meetings Act[1] (TOMA), the DISD[2]

---

1. Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Vernon Supp.1993).

2. Dallas Independent School District.

Board of Trustees (the Board) was required to open the meeting to the public.

To reach the majority's result, unnecessary emphasis is placed upon Webster's definition of the term "verbal exchange." Because the legislature chose not to define the term, we are to give it its ordinary meaning. *See* TEX.GOV'T CODE ANN. § 312.002 (Vernon 1988); *Hopkins v. Spring I.S.D.*, 736 S.W.2d 617, 619 (Tex.1987); *Estate of Padilla v. Charter Oaks*, 843 S.W.2d 196, 198 (Tex. App.—Dallas 1992, writ denied). An ordinary meaning is not limited to only those definitions contained in secondary authorities such as WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY. Common sense also goes a long way in assisting us.

However, even using Webster's own language, the definition of "verbal" includes "of or relating to words, consisting in or having to do with words, spoken rather than written words." The definition of "exchange" includes "giving [a thing] and receiving [a thing in return,]" "[such] as words." Using these definitions from the majority opinion, common sense satisfies me that the act of listening on the part of the Board—the reception of the words from the TEA[3] representative—was sufficient to constitute a "verbal exchange" required for "deliberation" by article 6252–17 of the Texas Revised Civil Statutes. *See* TEX.REV.CIV.STAT.ANN. art. 6252–17 (Vernon Supp.1993).

Further, a review of the record shows that Board member Yvonne Ewell questioned TEA representative Walter Chandler about the format of the TEA presentation. TEA representative Larry Garcia also testified that several Board members spoke at the meeting, but before he began his presentation. Even with this evidence before it, the trial court concluded that the meeting was not a "meeting" as defined by TOMA because no verbal exchange occurred between a quorum of the Board members or between a quorum of the members and any other person. The majority's definition of "verbal exchange" and its narrow application to the facts here would allow the Board to close any presentation before it, regardless of what occurs before or after a "presentation." I

believe that the interaction between the board and the TEA representatives was sufficient to bring the meeting within the definitions set forth in article 6252–17. *See* art. 6252–17. The "verbal exchange" between the Board and the TEA representatives occurred before Garcia's formal presentation began; however, article 6252–17 only specifies that a " 'meeting' means any deliberation between ... a quorum of members of a governmental body and any other person, at which any public business or public policy over which the governmental body has supervision or control is discussed or considered...." *See* art. 6252–17, § 1(a).

The topic of the meeting between the Board and the TEA representatives was accreditation of the DISD. There is no dispute that this is an area that the Board supervises and over which the TEA has control. *See* art. 6252–17, § 1(a). There is also no dispute that Ewell asked Chandler a question regarding the format of the presentation. I believe that this is "a reciprocal giving and receiving of spoken words" as the majority has defined the term "verbal exchange." *See* Majority Opinion at 537. There is no specification in TOMA that the "verbal exchange" must occur at a particular time during a presentation. Nor does TOMA state that the exchange must occur regarding a particular substantive area of a presentation.

In addition, the majority incorrectly concludes that Attorney General Opinion DM–191 erroneously construed the amended version of TOMA. That attorney general opinion quite properly concluded that the Board's silence is irrelevant in deciding whether or not a meeting was held in violation of the Act. *See* Op.Tex.Att'y Gen. No. DM–191 at 3 (1992).

Accordingly, I would reverse the trial court's judgment and render judgment for the Dallas Morning News.

---

**3.** Texas Education Agency.