No. 04-99-00053-CV



BEXAR MEDINA ATASCOSA WATER DISTRICT also known as 

Bexar-Medina-Atascosa Counties Water Control & Improvement District No. 1,

Appellant


v.


BEXAR MEDINA ATASCOSA LANDOWNERS' ASSOCIATION and 


Wilburn Schmidt,

Appellees



From the 38th Judicial District Court, Medina County, Texas


Trial Court No. 98-04-14412CV


Honorable Mickey Pennington, Judge Presiding



Opinion by: Paul W. Green, Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Paul W. Green, Justice


Delivered and Filed: July 21, 1999


AFFIRMED


 The issue in this appeal is whether "discussion" constitutes "deliberation" for
purposes of the Texas Open Meetings Act. Because we find the terms interchangeable, we
affirm the trial court's judgment.

Background


 Wilburn Schmidt and the Bexar Medina Atascosa Landowners' Association
(collectively, the landowners) sued the Bexar-Medina-Atascosa Counties Water Control and
Improvement District No. 1 (BMA) for violating the Texas Open Meetings Act. Specifically,
the landowners sought damages, attorney's fees, and injunctive relief.

 On April 27, 1998, the trial court held a temporary injunction hearing. BMA's
general manager and president of the board, John Ward, testified that five of seven board
members attended a meeting on February 17, 1998 in a barn owned by board member Ted
Kohlleppel.(1) Ward explained that the meeting was organized by several farmers for
informational purposes, although he prepared an agenda and invited a few landowners to
attend. As indicated on the agenda, Ward said several aspects of BMA's business were
discussed, including a presentation by BMA's legal counsel about the "legal maintenance"
of BMA and a presentation by BMA's engineer about a project involving Medina Lake.
Ward said he talked about "Goals 2000," BMA's plans for the future. Ward said several
board members made minor comments but none answered questions other than himself.

 Ward also indicated that a second meeting was held on March 6, 1998 in the home
of Gene Nelson, a landowner. Although BMA business was discussed, only three board
members attended, which was less than a quorum. On March 9, at a regularly convened
board meeting, Ward said he intended to hold more informational meetings. Finally, Ward
testified that public notice was not posted about the informational gatherings because he did
not consider them to be board meetings. To the contrary, the meetings were designed "to
inform some of the landowners on what the district has been doing and what we planned on
doing in the future." Ward also admitted that certain individuals, including board members,
were not invited to attend the meetings.

 Landowner Will Carter testified that Ward approached him about chairing the
February 17 meeting two days before the event. He said only three board members, who
were seated in the audience, spoke at the meeting. Only Ward answered any questions, and
the board members did not speak to each other. Carter indicated the meeting "let the
landowners give some feedback to the board members that believed in what they were doing
so as to let them know if they were on the right track or not."

 Kohlleppel also testified at the temporary injunction hearing. He said BMA
"business" was not discussed at the February 17 meeting, "depend[ing] on how you look at
it." He agreed, however, that BMA had ongoing, supervisory control over Project PL-566,
the water balance study, and Goals 2000--the topics at the February 17 meeting. Kohlleppel
indicated that thirty to forty people attended the meeting but no board action was taken at
that time. As for the purpose of the meeting, he said, "We agreed that the landowners that
could not make it to our regular meeting, you know, for them to come to educate them on
what's going on."

 Another board member, Paul Marbach, testified that no action was taken at the
February 17 meeting. He said only three board members attended the meeting in March. He
also indicated that the topics discussed at these meetings were similar to topics discussed at
regularly convened board meetings.

 Grace Hitzfelder said she was the only BMA board member who asked a question at
the February 17 meeting. She also spoke about PL-566 and asked the audience, "What do
you think we ought to do?" When asked whether business was discussed at this meeting,
Hitzfelder stated, "The goals of the BMA were discussed, but there was no business
discussed and no determinations made." Hitzfelder described the information presented as
the same discussed before "many, many times."

 At the conclusion of the hearing, the trial court granted the landowners a temporary
injunction enjoining BMA from holding unpublicized meetings and from excluding
participants at its meetings. A few months later, the landowners moved for summary
judgment, offering the transcript of the injunction hearing as evidence that BMA violated
the Texas Open Meetings Act on February 17, 1998. BMA responded to the motion with the
affidavits of Ward, Kohlleppel, Marbach, and Hitzfelder. Each of the affiants states that he
or she "did not specifically speak or address any BMA Water District Board member on any
matter of public business or public policy over which BMA Water District has supervision
or control." They also stated they did not consider the February 17 "informal gathering" a
"meeting" because they did not "intend" to "discuss, deliberate, or conduct a verbal
exchange between themselves or others on any issue of public business or policy over which
the Board has supervision or control."

 The trial court granted the landowners' motion for summary judgment based on its
finding that BMA violated the Open Meetings Act on February 17, 1998. The court also
awarded the landowners permanent injunctive relief plus attorney's fees and costs. BMA
appealed.

Standard and Scope of Review


 We review the summary judgment de novo. To prevail, the landowners must show
that there are no genuine issues of material fact and that they are entitled to judgment as a
matter of law. See Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Management, Co., 690
S.W.2d 546, 548-49 (Tex. 1985).(2) In deciding whether a disputed fact issue precludes
summary judgment, we take evidence favorable to BMA as true, indulge reasonable
inferences in its favor, and resolve any doubts to its advantage. See Nixon, 690 S.W.2d at
548-49).

Discussion


 BMA contends "discussion" is not synonymous with "deliberation" for purposes of
the Open Meetings Act. We disagree.

 The Open Meetings Act was enacted in 1967 to provide the public with the
opportunity to be informed about the transactions of public business. City of San Antonio
v. Fourth Court of Appeals, 820 S.W.2d 762, 765 (Tex. 1991). The Act requires a
governmental body to hold open meetings and to provide the public with notice of the
meetings. Tex. Gov't Code Ann. § 551.002, § 551.041 (Vernon 1994). As a water district,
BMA is subject to the Act. See id. § 551.001(3)(H); Tex. Water Code Ann. § 55.040
(Vernon Supp. 1999).

 Under the Act, a "meeting" means

 a deliberation between a quorum of a governmental body, or
between a quorum of a governmental body and another person,
during which public business or public policy over which the
governmental body has supervision or control is discussed or
considered or during which the governmental body takes formal
action. The term does not include the gathering of a quorum of
a governmental body at a social function . . . if formal action is
not taken and any discussion of public business is incidental to
the social function . . . .

Tex. Gov't Code Ann. § 551.001(4) (emphasis added). The Act further defines
"deliberation" as a "verbal exchange during a meeting between a quorum of a governmental
body, or between a quorum of a governmental body and another person, concerning an issue
within the jurisdiction of the governmental body or any public business." Id. § 551.001(2).

 BMA suggests that we incorporate an element of action or decision-making in the
definition of "deliberation." If we incorporated this element, we would alter the definition
of "meeting," which includes not only formal action but also discussion and consideration.
See Tex. Gov't Code Ann. § 551.001(4) (Vernon 1994). We therefore decline to equate
the definitions of "deliberation" and "decision."

 When viewed in the light most favorable to BMA, the evidence shows that projects
under BMA's control were discussed at the February 17 meeting. While the board members
and other speakers offered information about matters previously decided by the BMA, the
meeting was also designed to inform landowners about "what [the BMA] planned on doing
in the future" and to tell board members whether they were "on the right track or not."
Additionally, at least one board member asked a question while another answered questions.
Although the board members did not discuss business among themselves, it was only
necessary for their communication to occur between themselves and the other people present
at the February 17 meeting. See Dallas Morning News Co. v. Board of Trustees of Dallas
ISD, 861 S.W.2d 532, 539 (Tex. App.--Dallas 1993, writ denied).

 In conclusion, the BMA engaged in a verbal exchange about issues within its
jurisdiction. Whether the board members described this exchange as a discussion or a
deliberation does not raise a genuine issue of material fact. Therefore, as a matter of law, the
February 17 gathering was a "meeting" for purposes of the Open Meetings Act. Because the
meeting was not open or publicized, it violated the Open Meetings Act. Accordingly, the
trial court did not err in rendering summary judgment in favor of the landowners.

Conclusion


 The trial court's judgment is affirmed.


 PAUL W. GREEN,

 JUSTICE


PUBLISH


1. BMA's seven board members include Johnny Ward, Carlos Barrera, Jeanette Williams, Paul Marbach, Ted
Kholleppel, Grace Hitzfelder, and A.V. Thurman.
2. Whether any specific behavior violates the Open Meetings Act is generally a question of fact. See Op. Tex.
Att'y Gen. No. DM-95, at 3453. Nonetheless, a fact issue may be established as a matter of law. See Tex. R. Civ. P.
166a(c).