

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

January 19, 2005

The Honorable G. E. "Buddy" West
Chair, Committee on Energy Resources
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0294

Re: Authority of the Railroad Commission to use monies from the Oil Field Cleanup Fund to plug oil and gas wells and perform other activities (RQ-0253-GA)

Dear Representative West:

You inquire about the authority of the Texas Railroad Commission ("Commission") to make certain expenditures from the Oil Field Cleanup Fund.[1] By way of background, you state only that questions have arisen "as to the Railroad Commission's authority to use funds from the Oil Field Cleanup Fund to plug oil and gas wells, to remediate surface sites associated with oil and gas operations, and to provide for managerial overhead." *See* Request Letter, *supra* note 1, at 1. Specifically, you pose three questions:

1. Under what terms and conditions does the Railroad Commission have the authority to use funds from the Oil Field Cleanup Fund to plug an oil or gas well?

2. Under what terms and conditions does the Railroad Commission have the authority to use funds from the Oil Field Cleanup Fund to clean up or remediate a well-site or lease-site surface location associated with oil or gas operations?

3. Under what terms and conditions does the Railroad Commission have the authority to use funds from the Oil Field Cleanup Fund to clean-up or remediate what has been commonly referred to as a "commercial disposal site," not associated with a particular well or lease site?

*See id.*

---

[1] *See* Letter from Honorable G. E. "Buddy" West, Chair, Committee on Energy Resources, to Honorable Greg Abbott, Texas Attorney General (Aug. 6, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state .tx.us) [hereinafter Request Letter].

## I.     Chapter 91, Natural Resources Code

We begin by briefly reviewing the relevant provisions of the Natural Resources Code. The Commission has jurisdiction over all oil and gas wells in Texas. *See* TEX. NAT. RES. CODE ANN. § 81.051(a)(2) (Vernon 2001). Chapter 91, subchapter D, pertaining to the prevention of pollution associated with oil and gas production, authorizes the Commission to adopt and enforce rules and orders to "prevent pollution of surface water or subsurface water in the state." *Id.* § 91.101(a) (text effective *until* delegation of Resource Conservation and Recovery Act ("RCRA") authority to the Commission).[2] Subchapter D also establishes the Oil Field Cleanup Fund. *See id.* § 91.111 (Vernon Supp. 2004-05). The Oil Field Cleanup Fund ("fund") is to be used by the Commission (and its employees or agents) to:

> (1) conduct[] a site investigation or environmental assessment to determine:
>
> > (A) the nature and extent of contamination caused by oil and gas wastes or other substances or materials regulated by the commission under Section 91.101; and
> >
> > (B) the measures that should be taken to control or clean up the wastes, substances, or materials described in Paragraph (A);
>
> (2) control[] or clean[] up oil and gas wastes or other substances or materials regulated by the commission under Section 91.101 that are causing or are likely to cause the pollution of surface or subsurface water, consistent with Section 91.113;[3]
>
> (3) plug[] abandoned wells and administer[] or enforc[e] permits, orders, and rules relating to the commission's authority to prevent

---

[2]There are two sections in the Natural Resources Code enumerated 91.101, and they are practically identical. The two versions differ only in the delegation of jurisdiction over hazardous waste. Certain hazardous wastes are currently subject to the jurisdiction of the Texas Commission on Environmental Quality. *See* 16 TEX. ADMIN. CODE § 3.30(b)(2)(B) (2004). Once the Environmental Protection Agency ("EPA") authorizes the Railroad Commission to administer RCRA, "jurisdiction over such hazardous wastes will transfer from the TCEQ" to the Commission. *Id.*

The version cited here is effective *until* the EPA so authorizes the Commission. The other version is effective *upon* EPA's authorization of the Commission. However, the language cited in this opinion is the same in both versions of section 91.101 so that the issue of EPA authorization of the Commission does not impact the analysis in this opinion.

[3]Section 91.113 is entitled "Investigation, Assessment, or Cleanup by Commission."

> pollution under this chapter, Chapter 89,[4] or any other law administered or enforced by the commission under Title 3;[5]
>
> . . . .
>
> (6)  prepar[e] the report required under subsection (b).

*Id.* § 91.112(a) (footnotes added). Where "oil and gas wastes or other substances or materials regulated" by the Commission cause or are likely to cause pollution of surface or subsurface water, section 91.113 expressly authorizes the Commission to

> use money in the oil-field cleanup fund to conduct a site investigation or environmental assessment or control or clean up the oil and gas wastes or other substances or materials if:
>
> > (1)   the responsible person[6] has failed or refused to control or clean up the oil and gas wastes or other substances or materials after notice and opportunity for hearing;
> >
> > (2)   the responsible person is unknown, cannot be found, or has no assets with which to control or clean up the oil and gas wastes or other substances or materials; or
> >
> > (3)   the oil and gas wastes or other substances or materials are causing the pollution of surface or subsurface water.

*Id.* § 91.113(a) (Vernon 2001) (footnote added).

The Commission is directed to establish specific performance goals for the fund, including the number of site investigations and environmental assessments to be conducted, the number of abandoned wells to be plugged, and the number of surface locations to be remediated. *See id.* § 91.111(e)(1)-(3) (Vernon Supp. 2004-05). The Commission is further directed to report to the legislature on "the extent to which [the fund] has enabled the commission to better protect the environment and enhance the income of the [fund]." *Id.* § 91.112(b). The report is to include information on, among other things, the number of wells abandoned, the number of wells plugged, and the number of surface locations remediated. *See id.*

---

[4]Chapter 89, Natural Resources Code, pertains to abandoned wells.

[5]Title 3, Natural Resources Code, contains the provisions relating to oil and gas.

[6]"'Responsible person' means any operator or other person required by law, rules adopted by the commission, or a valid order of the commission to control or clean up the oil and gas wastes or other substances or materials." TEX. NAT. RES. CODE ANN. § 91.113(b) (Vernon 2001).

## II.    Use of the Oil Field Cleanup Fund

### A.    Plugging of Oil and Gas Wells

You first inquire about the terms and conditions under which the Commission has authority to use the fund to plug an oil or gas well. *See* Request Letter, *supra* note 1, at 1. The answer to this inquiry is governed by the plain language of the statute. Where language in a statute is unambiguous, the intent of the legislature is found in the "plain and common meaning of the words and terms used." *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993). Words in statutes are given their ordinary meaning unless the statute defines them or they are connected with and used with reference to a particular trade or subject matter or are a term of art. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998); *see also Dallas Morning News Co. v. Bd. of Trs. of Dallas Indep. Sch. Dist.*, 861 S.W.2d 532, 535 (Tex. App.– Dallas 1993, writ denied). Here, section 91.112(a)(3) expressly and unambiguously states that the fund is to be used by the Commission to plug abandoned[7] wells. *See* TEX. NAT. RES. CODE ANN. § 91.112(a)(3) (Vernon Supp. 2004-05). Accordingly, we conclude that the Commission has authority to plug an abandoned oil or gas well with these expenditures from the fund provided the Commission follows the plugging procedures set forth in chapter 89.

Chapter 89, pertaining to the Commission's authority over abandoned wells, first requires the Commission to determine whether an abandoned or nonoperating well that is "causing or is likely to cause pollution . . . or [where] gas or oil is escaping" was properly plugged. *Id.* § 89.041 (Vernon 2001). The determination is to be made at a hearing after due notice. *See id.* If the Commission determines that the well was not properly plugged, the Commission shall order the operator (or the nonoperator in certain instances) to plug the well. *See id.* § 89.042(a)-(b). The Commission may plug or replug the well if:

(1)  the well was properly plugged according to rules in effect at the time the well was abandoned or ceased to be operated; or

(2)  neither the operator nor nonoperator properly plugged the well, and

(A)  neither the operator nor nonoperator can be found; or

(B)  neither the operator nor nonoperator has assets with which to properly plug the well.[8]

---

[7]In the oil and gas context, the term "abandoned" means to "abandon all work upon such a well in pursuance of the search for oil or gas." *Struss v. Stoddard*, 258 S.W.2d 413, 417 (Tex. Civ. App.– Fort Worth 1953, writ ref'd n.r.e.).

[8]Where the well is leaking salt water, oil or gas, or is likely to do so, and the leakage will cause a serious threat of pollution or injury, the Commission may direct the operator to take remedial action or to plug the well, or the Commission may plug the well without notice and hearing. *See* TEX. NAT. RES. CODE ANN. § 89.043(b) (Vernon Supp. 2004-05).

*Id.* § 89.043(a) (Vernon Supp. 2004-05) (footnote added). If the Commission plugs the well, it may seek to recover its costs by issuing an order to the operator for reimbursement of plugging costs or by requesting that the attorney general file suit against the operator to recover the costs. *See id.* § 89.043(c).

## B.     Remediation of Oil or Gas Well- or Lease-site Surface Locations

You next inquire about the terms and conditions under which the Commission may use the fund to remediate oil or gas well-site or lease-site surface locations. *See* Request Letter, *supra* note 1, at 1. As with the plugging of wells, section 91.112(a) expressly authorizes the fund to be used by the Commission, as provided by section 91.113, to control or cleanup "oil and gas wastes or other substances or materials . . . that are causing or are likely to cause the pollution of surface or subsurface water." TEX. NAT. RES. CODE ANN. § 91.112(a)(2) (Vernon Supp. 2004-05). The language of section 91.112 is clear and unambiguous. Accordingly, we construe it by its plain language and conclude that the Commission may utilize funds in the fund to remediate oil and gas well sites so long as the Commission follows the provisions of section 91.113.[9]

## C.     Remediation of Commercial Disposal Sites

Your final inquiry relates to the Commission's ability to use the fund to clean up or remediate "commercial disposal sites." Request Letter, *supra* note 1, at 1. Neither the Natural Resources Code nor the Texas Administrative Code defines the term "commercial disposal site." However, the Commission, in its oil and gas regulations, has defined the term "commercial facility"[10] as a

---

[9]Our conclusion is bolstered by other provisions in subchapter D. Section 91.112(b) requires the Commission to provide the legislature with an annual report on the fund. *See id.* § 91.112(b). The report is to include information on "the number of surface locations remediated, by region." *Id.* § 91.112(b)(5). Section 91.111 requires that the Commission create performance goals for the use of the fund to include surface locations to be remediated. *See id.* § 91.111(e)(3). Additionally, the Commission must report quarterly on the "number of sites remediated with money from the fund" to the Oil-Field Cleanup Fund Advisory Committee. *Id.* § 91.1135(e)(1)(E). Clearly, subchapter D contemplates that abandoned well sites be remediated by the Commission through the fund.

Our conclusion is also consistent with the Commission's construction of subchapter D. It is apparent that the Commission construes subchapter D as authority to use the fund to remediate oil and gas well and lease sites. In 2002 the Commission used the fund to conduct 355 cleanup activities, including 187 routine remediation operations. *See* RAILROAD COMMISSION OF TEXAS, OIL FIELD CLEANUP PROGRAM, ANNUAL REPORT–FISCAL YEAR 2002, OIL AND GAS DIVISION, § V, at 9. In 2003, the Commission conducted 326 cleanup activities, including 189 routine remediation operations, using the fund. *See* RAILROAD COMMISSION OF TEXAS, OIL FIELD CLEANUP PROGRAM, ANNUAL REPORT–FISCAL YEAR 2003, OIL AND GAS DIVISION, § V, at 11. While an agency's construction is not controlling, it is entitled to serious consideration. *See Quick v. City of Austin,* 7 S.W.3d 109, 123 (Tex. 1998) ("While not controlling, the contemporaneous construction of a statute by the administrative agency charged with its enforcement is entitled to great weight.").

[10]The term "commercial disposal well" is defined as a "well whose owner or operator receives compensation from others for the disposal of oil field fluids or oil and gas wastes that are wholly or partially trucked or hauled to the well, and the primary business purpose for the well is to provide these services for compensation." 16 TEX. ADMIN. CODE § 3.9(4) (2004) (Tex. R.R. Comm'n, Disposal Wells).

> facility whose owner or operator receives compensation from others for the storage, reclamation, treatment, or disposal of oil field fluids or oil and gas wastes that are wholly or partially trucked or hauled to the facility and whose primary business purpose is to provide these services for compensation if [the facility is permitted under sections 3.8, 3.9, 3.46 or 3.57 of this title.]

29 Tex. Reg. 6006 (2004), *adopted* 29 Tex. Reg. 8271 (2004) (to be codified as an amendment to 16 TEX. ADMIN. CODE § 3.78(a)(3) at § 3.78(a)(4)). For purposes of this opinion, we assume the term "commercial facility" encompasses the term commercial disposal sites.

An express purpose of the fund is the "controlling or cleaning up [of] oil and gas wastes or other substances or materials regulated by the commission under Section 91.101 that are causing or are likely to cause the pollution of surface or subsurface water, consistent with section 91.113." TEX. NAT. RES. CODE ANN. § 91.112(a)(2) (Vernon Supp. 2004-05). Section 91.101 gives the Commission authority over, among other things, the

> discharge, storage, handling, transportation, reclamation, or disposal of oil and gas waste as defined in section 91.1011 of this subchapter, or of any other substance or material associated with any operation or activity regulated by the commission under subdivisions (1), (2), and (3) of this section.

*Id.* § 91.101(a)(4) (Vernon 2001) (text effective *until* delegation of RCRA authority to the Commission).[11] Section 91.1011 defines "oil and gas waste" as "waste that arises out of or incidental to the drilling for or producing of oil or gas." *Id.* § 91.1011(a) (text effective *until* delegation of RCRA authority to the Commission).[12] "Oil and gas waste" also includes "salt water, brine, sludge, drilling mud, and other liquid, semiliquid, or solid waste material." *Id.* § 91.1011(b). Pursuant to section 91.101(a)(4), the Commission also has authority over other substances and materials "associated with any operation or activity regulated by the commission under subdivisions (1), (2) and (3) of [section 91.101]." *Id.* § 91.101(a)(4). Subdivision (1) pertains to the drilling of exploratory wells; subdivision (2) relates to oil and gas production; and subdivision (3) deals with the operation, abandonment, and plugging of wells. *Id.* § 91.101(a)(1)-(3). Thus, the Commission's jurisdiction includes substances and materials involved with oil and gas production; drilling of exploratory wells; and the operation, abandonment and plugging of wells. By operation of sections 91.112(a)(2), sections 91.101(a)(1)-(4) and 91.1011, the fund can be used to remediate oil and gas waste and other substances and materials associated with certain oil and gas operations (collectively, "pollutant" or "pollutants") where they are causing or are likely to cause pollution of surface or subsurface water.

---

[11]*See supra* note 2.

[12]There are two sections 91.1011. They are almost identical except in their treatment of jurisdiction over certain hazardous wastes. As with section 91.101, *see supra* note 2, the language of both of the provisions cited here is identical and the issue of EPA authorization does not impact our analysis.

The focus of the fund is on the pollutant (oil and gas waste or other substances or materials) and the activity that caused it (operation or activity regulated by the Commission under subdivisions (1), (2) and (3)), rather than on the location (commercial disposal facility) of the pollutant. While the fund statute limits the use of the fund to pollutants resulting from one of the specified operations or activities within the jurisdiction of the Commission,[13] it does not limit the use of the fund to oil and gas well and lease sites. If the oil and gas waste or substance or material associated with the specified oil and gas activity within the jurisdiction of the Commission is causing or likely to cause pollution to surface or subsurface water, the fund may be used to clean up the pollutant. Therefore, we are of the opinion that the Commission may use the fund to remediate commercial disposal sites not associated with a particular well or lease site, but only to the extent that the site is contaminated with oil and gas wastes or other substances or materials associated with oil and gas production, the drilling of exploratory wells, and the operation, abandonment and plugging of wells.

---

[13]Jurisdiction of the Railroad Commission in oil and gas matters does not attach to land if there is no oil and gas activity in the area. *R.R. Comm'n of Tex. v. Delhi-Taylor Oil Corp.*, 302 S.W.2d 273, 276 (Tex. Civ. App.–Austin 1957, writ ref'd n.r.e.).

## S U M M A R Y

The Texas Railroad Commission is authorized to use the Oil Field Cleanup Fund to plug abandoned oil and gas wells and to remediate oil and gas well sites, provided the activities are conducted in compliance with other provisions of the Natural Resources Code.

The Texas Railroad Commission is also authorized to expend funds from the Oil Field Cleanup Fund to remediate commercial disposal sites to the extent a site is contaminated with oil and gas wastes or other substances or materials produced from oil and gas production, the drilling of exploratory wells, and the operation, abandonment and plugging of wells.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee