

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00841-CV

Lynn **FOREMAN** and Cesar Vasquez,
Appellants

v.

Patricia **WHITTY**, J.D. Kidwell, Dale Johnson, Larry Maddux, Individually and The City of
Junction, Texas and The Junction Texas Economic Development Corporation,
Appellees

From the 198th Judicial District Court, Kimble County, Texas
Trial Court No. DCV-2010-1029
The Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Phylis J. Speedlin, Justice
            Rebecca Simmons, Justice
            Steven C. Hilbig, Justice

Delivered and Filed:  December 12, 2012

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

        This is an appeal from a summary judgment granted in favor of the governmental entity

and related defendants in a suit for violation of the Texas Open Meetings Act.  We affirm in part,

and reverse and remand in part.

## BACKGROUND

Lynn Foreman[1] and Cesar Vasquez[2] sued the Junction Texas Economic Development Corporation ("JTEDC" or "the Board") and the following individuals and city (collectively, "Defendants") claiming violations of the Texas Open Meetings Act ("the Act" or "TOMA"):

- Patricia Whitty—Board's Executive Director[3]
- J.D. Kidwell—Board president
- Dale Johnson—Board member
- Larry Maddux—Member of the Junction City Council and its Mayor Pro Tem
- The City of Junction, Texas

*See* TEX. GOV'T CODE ANN. § 551.142(a) (West 2012) (providing an interested person may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of the Act by members of a governmental body); *see also id*. § 551.002 (West 2012) (providing that every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by Chapter 551 of the Texas Government Code).

The Board is comprised of seven voting members and operates pursuant to Bylaws which state in part that: the Board shall have seven members; a simple majority constitutes a quorum (i.e., four members); Junction City Council will hold the Board responsible for the proper discharge of its duties under the Bylaws; and all Board meetings must be conducted in accordance with the Act.

Viewing the evidence in the light most favorable to the non-movants, the record reflects that the present dispute arose when Foreman, in her capacity as treasurer, questioned whether Whitty utilized Board funds for unauthorized expenses. In January 2010, Foreman requested

---

[1] Lynn Foreman served as secretary/treasurer of the Board.

[2] Cesar Vasquez was elected vice president of the Board in March 2010, but never effectively served in that position because of the events underlying this suit.

[3] Whitty, a salaried employee, was charged with attending and organizing all Board meetings, setting and posting the agenda for such meetings, and overseeing the Board's compliance with the Act.

that Kidwell provide her with documentation regarding the questioned expenditures; Kidwell and Whitty refused and the previously cordial relations "quickly soured."

Around the same time, concerns arose regarding the Board's failure to comply with the Act. On January 18, 2010, City of Junction Mayor Shannon Bynum directed City Secretary Vivian Saiz to send an email to the Board stating it had been called to the Mayor's attention that Board member(s) were discussing Board issues outside open Board meetings and that such was a violation of the Act. The email included general advice regarding acceptable communications between Board members and stated that if a Board member intentionally violated the Act, the Mayor and City Council will consider removing them from their service on the Board.

Sometime after February 1, 2010, Kidwell telephoned Foreman and said that he wanted to bring her "up to speed" on some Board matters. Foreman refused to engage in the conversation on the grounds that such a non-quorum conference would violate the Act. Kidwell replied that, as Board president, he was free to confer with whomever he wanted. Kidwell also stated that Mayor Pro Tem Maddux had told him that such non-quorum discussions of Board business were permissible.

On March 1, 2010, during a meeting of the Board, a closed executive session was held to discuss Whitty's employment contract, as well as the service contract with the Board's legal counsel, Keaton Blackburn. The minutes of the meeting reflect that, as a result of the closed executive session, a motion was made to table Whitty's employment contract until the April 1 Board meeting so that revisions discussed during the executive session could be reflected in the draft contract and retirement plans could be further researched. The motion carried unanimously after a vote. A motion was also made to accept Blackburn's resignation. The minutes reflect that Blackburn stated at the meeting that, in his opinion, Board members were having meetings

that were not being posted according to the Act; he recommended the Board "err on the side of openness to the public by also posting the agenda of meetings where less than a quorum of Board members was present." A majority of the Board opposed Blackburn's resignation, but his verbal resignation was voluntary and did not require any approval.

Foreman subsequently met with Blackburn, the Board's former legal counsel and then the City Attorney, to discuss the alleged unauthorized expenditures by Whitty as well as the alleged violations of the Act. Thereafter, on March 17, 2010, Whitty sent an email requesting alternative dates for a future Board meeting, and Foreman replied to all recipients with some possible dates. Johnson responded about an alternate date, but went on to write to all the email recipients:

> . . . ALSO . . . why do I keep hearing that you [Foreman] and Cesar are STILL meeting with Mr. Blackburn about Patricia [Whitty] or any other reason??? I hope this is not true, but if it is and you guys are not happy with the resolutions of the Board and if you are still having discourse with Mr. Blackburn then you should resign as he did . . . we have better things to do than dealing with members trying to Back Stab each other . . . Hope I am wrong about all this and if so I apologize in advance.

Whitty quickly emailed all recipients, cautioning them not to respond to Johnson's email because doing so "<u>may be</u> in violation of the Open Meetings Act." (emphasis in original). Foreman and Vasquez construed Johnson's email as a threat to remove them from the Board or to subject them to official discipline.

At the next Board meeting on April 1, 2010, the following executive session item was placed on the Board agenda at the request of Kidwell: "To Hear a Complaint or Charge against an Officer(s)." Foreman and Vasquez believed they were the subject of the complaint and retained an attorney who attended the meeting with them. The Board postponed acting on the complaint because of concerns that the agenda item was not properly posted and because of the "contentious" nature of the meeting.

The agenda for the next City Council meeting set for April 23, 2010 contained an item regarding disciplining or removing unnamed Board members. The day before, on April 22, 2010, Foreman and Vasquez filed suit alleging that the Defendants, individually or in conjunction with some or all other Defendants, acted in violation of the Act, misapplied fiduciary property, breached their fiduciary duty to the taxpayers of the City of Junction, and/or engaged in official oppression. On August 27, 2010, Foreman and Vasquez filed their Second Amended Original Petition seeking to void: (1) Whitty's employment contract; (2) compensation awarded to the secretary/treasurer of the Board on October 1, 2009 as exceeding the budget; (3) gift basket purchases made by Whitty; and (4) reimbursement of personal expenses to Whitty that were not authorized by the Board.

The Defendants (all Defendants except for Johnson) filed a no-evidence motion for summary judgment, asserting that they were entitled to summary judgment on all claims because there was no evidence that: (1) Whitty was a member of a governmental body or that Maddux was a member of the Board; and (2) there were any deliberations between a quorum of Board members, or deliberations by less than a quorum, constituting a meeting under the Act. After considering the response filed by Foreman and Vasquez, the trial court granted the Defendants' no-evidence motion.

Johnson separately filed a traditional motion for summary judgment as to the five violations of the Act alleged against him. The trial court granted Johnson's motion for summary judgment as to the first, second, fourth, and fifth allegations. The third allegation remained outstanding; Johnson thereafter filed a first amended no-evidence motion, in which he sought entry of a no-evidence summary judgment as to the remaining violation (number three) of the Act alleged against him. The trial court granted Johnson's first amended no-evidence motion for

summary judgment after considering the response filed by Foreman and Vasquez.  Johnson also filed a cross-action in which he sought a declaration that he had never violated the Act while a member of the Board.  He also sought to recover attorney's fees.

Johnson then filed a third motion for summary judgment, titled "Defendant Dale Johnson's *No Evidence* Motion For Summary Judgment on Defendant's Cross-Action For Declaratory Judgment" in which he sought a declaration that he did not violate the Act during the time he was a member of the Board.  The trial court granted this motion and entered a declaratory judgment declaring that Johnson did not violate the Act during the time he was a member of the Board.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(b) (West 2008).  The trial court also awarded Johnson $20,000 in attorney's fees.  Foreman and Vasquez timely appealed.

## DISCUSSION

On appeal, Foreman and Vasquez challenge the various motions for summary judgment granted by the trial court, arguing that genuine issues of material fact exist on each of their claims; they also challenge the declaratory judgment in favor of Johnson and the award of attorney's fees to him.

### *Standard of Review and Applicable Law*

We review both traditional and no-evidence summary judgment rulings de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Willmann v. City of San Antonio*, 123 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied).  A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action.  *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).  A traditional summary judgment is appropriate only when there is

no disputed issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). If the movant succeeds in establishing its right to judgment as a matter of law, the burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions drawn from all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). It is not the role of the trial court, at summary judgment, to evaluate the credibility of the affiants or the weight of the summary judgment evidence, but only to determine whether a disputed fact issue exists which should be resolved by the trier of fact. *See State v. Durham*, 860 S.W.2d 63, 66 (Tex. 1993); *see also Palestine Herald–Press Co. v. Zimmer*, 257 S.W.3d 504, 508 (Tex. App.—Tyler 2008, pet. denied). In reviewing the grant of a traditional summary judgment, we resolve every doubt and indulge every reasonable inference in favor of the non-movant. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (appellate court takes as true all evidence favorable to non-movant); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.— Houston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R.

CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the non-movant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) ("More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'") (internal citations omitted). We indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Grant*, 73 S.W.3d at 215.

***Texas Open Meetings Act***

Every regular, special, or called meeting of a governmental body shall be open to the public unless otherwise provided by the Government Code.[4] TEX. GOV'T CODE ANN. § 551.002 (West 2012); *Esperanza Peace & Justice Ctr. v. City of San Antonio*, 316 F.Supp.2d 433, 472 (W.D. Tex. 2001); *Standley v. Sansom*, 367 S.W.3d 343, 354 (Tex. App.—San Antonio 2012, pet. denied). The purpose of the Texas Open Meetings Act is to enable public access to, and to increase public knowledge of, government decision making. *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991). "The Open Meetings Act was promulgated to encourage good government by ending, to the extent possible, closed-door sessions in which deals are cut without public scrutiny." *Save Our Springs Alliance, Inc. v. Lowry*, 934 S.W.2d 161, 162 (Tex. App.—Austin 1996, orig. proceeding) (citing *Cox Enters., Inc. v. Bd. of Trustees of the Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 960 (Tex. 1986) ("The Act is intended to safeguard the public's interest in knowing the workings of its governmental bodies.")). Provisions of the Act should be liberally construed to effect its purpose. *See Willmann*, 123

---

[4] Exceptions to the general rule are listed in Chapter 551, Subchapter D, of the Texas Government Code. *See* TEX. GOV'T CODE ANN. §§ 551.071–.089 (West 2012).

S.W.3d at 473; *Toyah Ind. Sch. Dist. v. Pecos-Barstow Ind. Sch. Dist.*, 466 S.W.2d 377, 380 (Tex. Civ. App.—San Antonio 1971, no writ).

*Analysis*

### 1. No-Evidence Motion for Summary Judgment Filed by Defendants (other than Johnson)

The Defendants (all but Johnson) moved for a no-evidence summary judgment on the grounds that there existed no evidence: (1) that Whitty was a member of a governmental body or that Maddux was a member of the Board; and (2) that there was any deliberation between a quorum of Board members, or deliberations by less than a quorum, that constitutes a meeting under the Act. The trial court granted the no-evidence motion for summary judgment without stating the basis for its ruling. Accordingly, we must affirm the trial court's judgment if any of the theories advanced by the Defendants will support the summary judgment. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

We begin by determining if Foreman and Vasquez satisfied their burden of producing some evidence, in response to the no-evidence motion, raising a genuine issue of material fact that the named Defendants violated the Act. A violation of the Act occurs when a quorum of a governmental body meets in private to deliberate over public business. TEX. GOV'T CODE ANN. § 551.002. In the case before us, a quorum consists of four board members. *Id*. § 551.001(6) (West 2012) ("quorum" means a majority of a governmental body). The Act defines a "meeting" as:

> a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action . . . .

*Id.* § 551.001(4)(A). "Deliberation" is defined as "a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body or any public business." *Id.* § 551.001(2) (West 2012). "Verbal exchange" is not specifically defined in the Act; therefore, we give the phrase its ordinary meaning. *See Cities of Austin, Dallas, Ft. Worth, and Hereford v. Sw. Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002) (we accept the words used in a statute according to their ordinary meaning unless given a statutory definition); *Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000); *see also Dallas Morning News Co. v. Bd. of Trustees of Dallas Indep. Sch. Dist.*, 861 S.W.2d 532, 537 (Tex. App.—Dallas 1993, writ denied) (interpreting "verbal exchange" as a "reciprocal giving and receiving of spoken words" and holding that the Act did not apply when school board members listened silently to a report by Texas Education Agency employees).

Foreman and Vasquez produced the following evidence in response to the Defendants' no-evidence summary judgment motion: Foreman's affidavit dated May 6, 2011; deposition excerpts from the November 4, 2010 oral deposition of Vasquez; excerpts from Whitty's September 3, 2010 answers to plaintiffs' interrogatories; and various emails, meeting minutes, agendas, and Board documents. Foreman states within the affidavit that she and Vasquez were appointed to the Board in early 2010. In her capacity as Board treasurer, she discovered that Whitty used Board funds for numerous expenses not authorized by the Board. She requested documentation of the questioned expenses, but was refused such documentation by Kidwell and Whitty. She further describes (1) a "Warning e-mail from Mayor Shannon Bynum addressed to the Board in January 2010 about 'walking quorum' TOMA violations identical to those alleged in this suit;" (2) advice from attorney Blackburn to the Board on March 1, 2010 telling the Board

"in the strongest terms that [the Board's] manner of operation risked violating TOMA;" and (3) Whitty's email on March 17, 2010 warning members not to respond to Johnson's email or risk a violation of the Act. Foreman further states,

> . . . Kidwell telephoned me and attempted to engage me in a private conference, stating that he wanted to "bring me up to speed" on what was happening with [Board] matters. When I refused, on the grounds that such non-quorum conferences would violate TOMA, Kidwell stated that as [Board] president, he was free to confer with whoever he wanted to. Kidwell also informed me that Defendant Larry Maddux, a member of Junction City Council and its mayor pro tem, had explicitly told him that such non-quorum discussions of [Board] business were permissible.
>
> After terminating Kidwell's attempt to discuss [Board] business with me in a non-quorum setting, it was my very clear impression that it was Kidwell's regular practice to similarly contact all [Board] members individually and discuss public business in advance of posted meetings, so as to reach a pre-meeting consensus. Likewise, when attending [Board] meetings, I found that certain matters were often disposed of without any substantive discussion, precisely as if the other Board members had privately discussed such matters in advance.

Vasquez testified by deposition that he received several phone calls from Kidwell but only answered the first call. Kidwell told him he was the president of the Board and was allowed to discuss "the issues at hand." Vasquez never met with Kidwell or talked with him about Board business; did not know which other Board member Kidwell contacted to discuss Board business; and had himself never talked to other Board members outside the Board meetings.

Even viewing the evidence in the light most favorable to Foreman and Vasquez, as we must, we conclude Foreman and Vasquez produced no evidence that a violation of the Act occurred. First, summary judgment evidence must be "clear, positive and direct, otherwise credible and free from contradictions and inconsistences, and could have been readily controverted." TEX. R. CIV. P. 166a(c). In addition, affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P.

166a(e). Here, much of Foreman's affidavit is based on her opinion that various Board members violated the Act because the Board received numerous warnings regarding alleged violations of the Act, such as Saiz's email stating "it has been called to [Bynum's] attention that [] board member(s) are discussing [] issues outside open board meetings," Blackburn's advice to the Board prior to resigning, and Whitty's reply email cautioning that emails may violate TOMA. Foreman does not, however, submit specifics about the complained-of communications, such as the timing and subject matter of the communications, or the specific Board members with whom the alleged public business was discussed. Conclusory statements or statements based purely on opinion are not competent summary judgment evidence. *See Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894–95 (Tex. App.—Texarkana 2009, pet. denied).

Second, although both Foreman and Vasquez testified by affidavit that Kidwell telephoned them on separate occasions stating he wanted to "bring [Foreman] up to speed," and, as to Vasquez, to discuss "the issues at hand," both also testified they refused to discuss Board business with Kidwell. Given that both Foreman and Vasquez refused to respond to Kidwell, we cannot conclude that a verbal exchange occurred so as to constitute a deliberation over public business. *See* TEX. GOV'T CODE ANN. § 551.001(2); *Dallas Morning News*, 861 S.W.2d at 537 (interpreting "deliberation" to mean a "reciprocal giving and receiving of spoken words"); *see also* TEX. ATTY. GEN. OP. LO-95-055, at *2–3 (1995) (holding that question of whether deliberations prohibited by the Act have taken place depends upon all the relevant facts and circumstances, and is a question for the trier of fact). Additionally, Foreman's "clear impression that it was Kidwell's regular practice to similarly contact all [Board] members individually and discuss public business in advance of posted meetings, so as to reach a pre-meeting consensus" amounts to mere suspicion and speculation that the Defendants intended to evade the

requirements of the Act and, therefore, is insufficient to raise a fact issue. Although circumstantial evidence may be used to establish any material fact, it "must transcend mere suspicion." *Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex. 2001). Evidence that is mere surmise or suspicion does not amount to more than a scintilla of evidence to raise a material issue of fact and is, therefore, no evidence. *See Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.).

Foreman and Vasquez did not present more than a scintilla of evidence that the Defendants committed a violation of the Act. Because Foreman and Vasquez failed to raise a genuine issue of material fact that a violation of the Act occurred, i.e., that a quorum of the Board met in private to deliberate over public business, we conclude that the trial court did not err in granting the Defendants' no-evidence motion for summary judgment.

### 2. Johnson's Traditional and No-Evidence Motions for Summary Judgment

Next, Foreman and Vasquez contend that the trial court erred in granting both Johnson's traditional and no-evidence motions for summary judgment.

#### A. *Johnson's Traditional Motion*

In their second amended petition, Foreman and Vasquez alleged that Johnson violated the Act by engaging in five actions outside a properly posted public meeting: (1) he delivered a letter to other Board members complaining about Whitty's job performance in November 2008; (2) he conferred with Whitty and other Board members about the payment terms of Whitty's employment contract in December 2008; (3) he conferred with Vasquez about the payment terms of Whitty's employment contract; (4) he asked Whitty to call Vasquez to come to City Hall to discuss Board business with him after the lawsuit was filed and; (5) he wrote an email to the entire Board on March 17, 2010 complaining that Vasquez and Foreman were in disagreement

with Board resolutions and suggesting that they resign. Johnson subsequently filed a traditional motion for summary judgment on the grounds that he is no longer a Board director, having resigned on April 6, 2010 before the lawsuit was filed, and, therefore, could not be enjoined from doing something he no longer can do.[5] Johnson further asserted that the allegations against him failed as a matter of law because the alleged actions did not involve a quorum, did not involve public business, and no discussion or deliberation occurred.

As to the first claimed violation of the Act, Johnson attached as summary judgment evidence his affidavit stating that the November letter was written in 2009, not 2008 as alleged, and furthermore, was properly placed on the agenda during a December 3, 2009 Board meeting and discussed by a quorum of the Board on that date in executive session. As to the second alleged violation, Johnson testified by affidavit that he never conferred with Whitty or other Board members about the terms of Whitty's employment contract. He also attached Foreman's responses to requests for admission, in which she states, "I believe it is more than likely that Dale Johnson, J.D. Kidwell, and Patricia Whitty have all conferred privately on many occasions about the public business of the [Board]," but also admits that she has no personal knowledge that Johnson has ever conferred privately with Whitty or Kidwell about the public business of the Board. As to the fourth claimed violation of the Act, Johnson attached his letter of resignation dated April 6, 2010 and testified by affidavit that he resigned from the Board on April 6, 2010, prior to the lawsuit filed being filed on April 22, 2010. He also testified by affidavit that it is untrue that he asked Whitty to call Vasquez to discuss Board business. Finally, as to the fifth allegation, Johnson offered his affidavit regarding the March 17, 2010 email as well as a copy of

---

[5] Johnson also moved for summary judgment on Foreman's and Vasquez's claim for creating a "constructive trust" to manage the Board, on the grounds that he is no longer a director of the Board and therefore the conditions of a trust cannot be imposed upon him.

the email itself, which he describes as nothing more than a "can't we all get along" letter which does not discuss public business.[6] In sum, Johnson asserted that he was entitled to judgment as a matter of law because the allegations against him did not allege the existence of a "meeting" in violation of the Act. Specifically, none of the allegations alleged the existence of a quorum, and the first and fifth allegations failed to allege that a discussion or deliberation of public business or policy occurred.

In response, Foreman and Vasquez produced their affidavits—Foreman's was dated October 5, 2010 and Vasquez's was dated October 7, 2010—as evidence in which they stated their beliefs that Johnson's actions constituted violations of the Act. The trial court granted Johnson's motion for summary judgment relating to all of the alleged violations except as to the allegation that Johnson conferred with Vasquez about the payment terms of Whitty's employment contract (the third allegation). The trial court further found that Johnson resigned effective April 6, 2010.

We now examine the summary judgment record to determine if Johnson established as a matter of law that there is no genuine issue of material fact as to the "meeting" element of a TOMA violation. *See Grant*, 73 S.W.3d at 215. As to the first alleged violation, Foreman's affidavit avers that although Johnson did not send the November 9, 2009 letter to her, he attempted to "engage me in conversation about the letter at his store after it was written but before the board meeting." Vasquez avers that the November 9, 2009 letter discussing "policy and direction related to the performance of" Whitty was not sent to him but that the letter was distributed at the December 2009 Board meeting. Regarding the fifth alleged violation, Foreman avers that Johnson's March 17, 2010 email "speaks for itself." She claims that the email was a

---

[6] Because the trial court denied the traditional motion for summary judgment as to the third alleged violation of the Act, we do not address the third allegation at this time.

violation of the Act because it was acknowledged as such by Whitty when she responded to all recipients with the admonishment not to respond to Johnson's email because such communication "<u>may be</u> considered a violation of the Open Meetings Act." Vasquez similarly avers that Johnson's March 17, 2010 email constitutes a violation of the Act.

We cannot conclude that this evidence raises a genuine issue of material fact that Johnson committed a violation of the Act. There is no evidence that the November 9, 2009 letter was sent to a quorum of Board members before the December 2009 Board meeting; Foreman and Vasquez do not identify to whom the letter was sent. Thus, there is no evidence that a violation of the Act occurred. *See* TEX. GOV'T CODE ANN. § 551.002 (violation of the Act occurs when a meeting of a governmental body is not open to the public); *id*. § 551.001(4)(A) (defining "meeting" as a deliberation between a quorum of a governmental body). Further, even assuming the letter was sent to a quorum, there is no evidence that the letter was discussed by Board members outside of a properly posted meeting. *See id*. § 551.001(4)(A) ("meeting" means a deliberation during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action); *id.* § 551.001(2) ("deliberation" requires a "verbal exchange"). Similarly, we conclude that on this record, a fact issue has not been raised as to whether Johnson's March 17, 2010 email violated the Act. In the email, Johnson wrote:

> . . . ALSO . . . why do I keep hearing that you [Foreman] and Cesar are STILL meeting with Mr. Blackburn about Patricia [Whitty] or any other reason??? I hope this is not true, but if it is and you guys are not happy with the resolutions of the Board and if you are still having discourse with Mr. Blackburn then you should resign as he did . . . we have better things to do than dealing with members trying to Back Stab each other . . . Hope I am wrong about all this and if so I apologize in advance.

The email simply does not discuss public business, and any further email discussion was promptly curtailed by Whitty. *See id.* § 551.001(2) ("deliberation" is a "verbal exchange during a meeting between a quorum of a governmental body . . . concerning an issue within the jurisdiction of the governmental body or any public business"). Absent evidence that a quorum of the Board met and discussed public business, Foreman and Vazquez cannot prevail on their claims for violations of the Act. Accordingly, we conclude Johnson established his entitlement to judgment as a matter of law on the first and fifth allegations against him.

As to the remaining allegations, we similarly conclude that Johnson successfully negated the "meeting" element of an Open Meetings violation. In response to the allegation that Johnson asked Whitty to call Vasquez to meet at City Hall to discuss Board business, Vasquez avers in his affidavit that "[o]n another occasion during this same time frame [between September 2009 and March 2010], Patricia Whitty called me and told me that Dale Johnson wanted to meet with me about EDC business, but as she was not able to provides [sic] me with details about what Johnson wanted to discuss, I did not go." Clearly, since Johnson did not go, there was no discussion or deliberation between Johnson and Vasquez so as to constitute a meeting under the Act. Regarding the allegation that Johnson conferred with Whitty and other Board members about Whitty's employment contract in December 2008, Foreman declares in her affidavit that "[Johnson] asked me after a board meeting had adjourned what I thought of Whitty's proposed employment contract. I responded that it was OK, and he said, 'Good, because I wrote it.' I declined further discussion of the matter, and left immediately." Again, we cannot conclude that this dialogue amounts to deliberation of public business.[7] The Act was promulgated with the intent of ending closed-door sessions in which agreements are reached without public scrutiny.

---

[7] In his affidavit, Vasquez does not aver that Johnson attempted to discuss Whitty's contract with him in December 2008 as he and Foreman alleged in their second amended petition; instead, he asserts that Johnson showed him pie charts and graphs related to Whitty's employment between September 2009 and March 2010.

*Save Our Springs Alliance*, 934 S.W.2d at 162. One board member asking another board member her opinion on a matter does not constitute a deliberation of public business. Further, a per se violation of the Act does not occur when members of a governmental body confer one-on-one outside of a posted meeting, unless the members meet in less than a quorum with the intent to evade the Act's requirements. *See Esperanza Peace & Justice Ctr.*, 316 F.Supp.2d at 473; *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Here, there is no evidence that Johnson met with Board members in less than a quorum with the intent to circumvent the Act. Because Johnson negated the "meeting" element of an Open Meetings violation, he established his right to judgment as a matter of law as to these allegations. Accordingly, we hold that the trial court did not err in granting Johnson's traditional motion for summary judgment.

### B. *Johnson's No-Evidence Motion*

Johnson also filed a no-evidence summary judgment motion as to the remaining allegation against him. In their pleadings, Foreman and Vasquez alleged that: "Dale Johnson conferred with Cesar Vasquez in the city office about the payment terms of Patricia Whitty's employment contract and told Vasquez that he had discussed these same terms with other board members. This conferring was not done in a properly posted public meeting." In their prayer, Foreman and Vasquez sought to void Whitty's employment contract.

Only actions taken by a governmental body in violation of the Act are voidable. *See* TEX. GOV. CODE ANN. § 551.141 (West 2012). In their pleadings, Foreman and Vasquez did not complain of an illegal "action" taken by the Board as a result of Johnson's "walking quorum" discussions regarding Whitty's employment contract. Although they seek to void Whitty's employment contract, the record before us is absolutely devoid of any evidence of when or if Whitty's employment contract was approved by the Board. *See id*.; *see also Tex. State Bd. of*

*Public Accountancy v. Bass*, 366 S.W.3d 751, 761 (Tex. App.—Austin 2012, no pet.) ("proving that a meeting violated the Act does not necessarily render voidable all related subsequent actions by a governmental body"); *Olympic Waste Servs. v. City of Grand Saline*, 204 S.W.3d 496, 504 (Tex. App.—Tyler 2006, no pet.) (holding plaintiff was not entitled to remedy of voiding contract that was awarded pursuant to vote taken in open session after Open Meetings violation occurred). However, Johnson moved for no-evidence summary judgment only on the ground that no deliberation occurred between himself and Vasquez, and thus no violation of the Act occurred. Although he denied the factual allegations against him, Johnson specifically asserted that a meeting did not take place because Vasquez did not respond to his conversation. Johnson concluded his motion as follows, "Even if Cesar Vasquez['s] allegations regarding his conversation with Dale Johnson are taken to be true, there is no evidence of an essential element of the TOMA, that is, that a response was made thereby creating a meeting." Because Johnson's no-evidence motion was narrowly tailored to only address the deliberation element of a violation of the Act, we review Johnson's no-evidence motion only on that basis. *See* TEX. R. CIV. P. 166a(i) ("The motion must state the elements as to which there is no evidence."); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

In their response to the no-evidence motion, Foreman and Vasquez argued that the absence of a verbal response is not fatal to a claim under the Act because section 551.142[8] applies to both actual and threatened violations of the Act; thus, "whether Johnson <u>actually</u> initiated a back-and-forth verbal deliberation with Vasquez, or between other JTEDC board members, is irrelevant." They also argued that summary judgment was improper because, even if a quorum did not exist, Johnson attempted to discuss public business (i.e., Whitty's contract)

---

[8] "An interested person . . . may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." TEX. GOV'T CODE ANN. § 551.142(a) (West 2012).

with Vasquez with the intent to evade the Act. Included in the evidence attached to the response was Vasquez's affidavit dated June 7, 2011. In the affidavit, Vasquez averred that:

> In December of 2009, I went to city hall to talk with Patricia Whitty. While at city hall, Dale Johnson approached me and asked if I had a moment to speak with him. Thereafter, Dale Johnson began discussing matters regarding the salary of Patricia Whitty's employment. Dale Johnson also stated that he had already discussed Patricia Whitty's salary with other Board members. Such discussions are in violation of TOMA.

The trial court granted Johnson's no-evidence motion without stating the reasons for its ruling.

Viewing the evidence in the light most favorable to Foreman and Vasquez, we conclude that they failed to raise a fact question on the element of deliberation. As we have previously discussed, deliberation requires a "verbal exchange during a meeting between a quorum . . . concerning public business." TEX. GOV'T CODE ANN. § 551.001(2); *see also Gardner v. Herring*, 21 S.W.3d 767, 769-72 (Tex. App.—Amarillo 2000, no pet.); *Dallas Morning News*, 861 S.W.2d at 537. Vasquez's affidavit is silent as to whether he responded to Johnson. Although it is plausible that Vasquez did respond, it is also equally plausible that he did not. *See City of Keller*, 168 S.W.3d at 813 ("When the circumstances are equally consistent with either of two facts, neither fact may be inferred."); *Lozano*, 52 S.W.3d at 148 ("When circumstantial evidence is so slight that the choice between opposing plausible inferences amounts to nothing more than speculation, it is legally no evidence at all."). Absent a response from Vasquez, Foreman and Vasquez failed to present some evidence showing that a verbal exchange occurred so as to constitute a meeting. *See Dallas Morning News*, 861 S.W.2d at 537; *see also* TEX. ATTY. GEN. OP. LO-95-055, at *2-3 (1995).

We are also unpersuaded that the facts before us give rise to a "threatened violation" of the Act. In *Harris Cnty. Emergency Serv. Dist. No. 1 v. Harris Cnty. Emergency Corps.*, 999 S.W.2d 163, 171 (Tex. App.—Houston [14th Dist.] 1999, no pet.), the court of appeals affirmed

the lower court's granting of an injunction prohibiting appellants from holding emergency meetings in the future in the absence of a bona fide emergency and unless the meetings were properly noticed. Appellants admitted that they held three emergency meetings in violation of the Act, but argued there was no evidence that such an action would occur in the future, and thus they should not be enjoined from such an action. *Id.* The *Harris County* court relied on section 551.142 in holding that an injunction may be granted to prevent a threatened violation of the Act where appellants have "shown a pattern" of not properly posting notice for their emergency meetings. *Id.*; TEX. GOV'T CODE ANN. § 551.142(a). Here, in contrast, there is no pattern of past violations of the Act. To the contrary, Foreman and Vasquez presented no evidence that Johnson violated the Act. Accordingly, we conclude that the trial court properly granted Johnson's no-evidence motion as to the third violation of the Act alleged against Johnson.

**3. Johnson's No-Evidence Motion for Summary Judgment on Johnson's Cross-Action for Declaratory Judgment and Award of Attorney's Fees**

Lastly, Foreman and Vasquez argue that the trial court erred in granting Johnson's no-evidence motion for summary judgment on his cross-claim for declaratory relief and in awarding attorney's fees to Johnson under the Declaratory Judgments Act.

After Johnson filed his no-evidence motion as to the third alleged violation of the Act, Foreman and Vasquez filed a brief to the court questioning the effective date of Johnson's resignation from JTEDC. Therein, they acknowledged that Johnson wrote his letter of resignation on April 6, 2010, but argued that the letter did not take effect on the date it was written. In response, Johnson filed his First Amended Original Answer and Cross-Action in which he sought a declaration that he never violated the Act during the time he was a member of the Board. He also sought to recover attorney's fees. Foreman and Vasquez filed a general denial.

Thereafter, Johnson filed a No-Evidence Motion for Summary Judgment on his Cross-Action for Declaratory Judgment on the grounds that there were no genuine issues of material fact remaining in regard to any of the claims asserted against him, and therefore no fact issues exist regarding his cross-action for declaratory judgment; thus, he sought a declaration that he had never violated the Act during the time he was a member of the Board. Johnson also sought to recover $20,000 in attorney's fees under Chapter 37 of the Texas Civil Practice and Remedies Code. He attached the affidavit of his attorney, attesting to his fees as being fair and reasonable. Foreman and Vasquez did not file a response.

After a hearing, the trial court granted Johnson's no-evidence motion for summary judgment on Johnson's cross-action for declaratory judgment and entered a declaratory judgment pursuant to section 37.003(b) declaring that Johnson did not violate the Act during the time he was a member of the Board of the JTEDC. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(b) (West 2008). The trial court awarded Johnson $20,000 in attorney's fees.

Now, on appeal, Foreman and Vasquez contend that the trial court improperly granted Johnson's motion because a no-evidence motion cannot be filed on a claim or defense on which the movant has the burden of proof. They assert that Johnson had the burden of prevailing on his affirmative cross-claim as well as his claim for attorney's fees, and therefore he improperly filed a no-evidence motion. We agree.

A movant cannot file a no-evidence motion for summary judgment on a claim or defense on which he has the burden of proof at trial. *Killam Ranch Props., Ltd. v. Webb Cnty.*, 376 S.W.3d 146, 157–58 (Tex. App.—San Antonio 2012, pet. denied); *Pollard v. Hanschen*, 315 S.W.3d 636, 639 (Tex. App.—Dallas 2010, no pet.). Assuming, without deciding, that Johnson

was entitled to seek a declaratory judgment,[9] Johnson had the burden of proving that he had never violated the Act while a member of the Board. Johnson did not seek a traditional summary judgment on his claim for declaratory judgment and did not conclusively establish that he had never violated the Act while a member of the Board. Thus, Johnson was not entitled to summary judgment on his cross-action for declaratory judgment and the trial court erred in granting the motion. We therefore reverse the summary judgment granted on Johnson's cross-action for declaratory judgment, as well as the award of attorney's fees, and remand the case to the trial court for further proceedings.

## CONCLUSION

Based on the foregoing, we affirm the no-evidence summary judgment granted in favor of Patricia Whitty, J.D. Kidwell, Larry Maddux, the City of Junction, Texas, and the Junction Texas Economic Development Corporation. We additionally affirm the traditional and no-evidence summary judgments granted in favor of Dale Johnson. We reverse the portion of the judgment granting Dale Johnson's no-evidence motion for summary judgment on his cross-action for declaratory judgment, as well as the award of attorney's fees, and remand to the trial court for further proceedings on this claim consistent with this opinion.

Phylis J. Speedlin, Justice

---

[9] *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 200 (Tex. 2007) (citing *Tex. Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 895 (Tex. 1970) ("[A]n action for declaratory judgment will not be entertained if there is pending, at the time it is filed, another action or proceeding between the same parties and in which may be adjudicated the issues involved in the declaratory action.")); *see also BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 841 (Tex. 1990) ("The Declaratory Judgments Act is 'not available to settle disputes already pending before a court.'").