ACCEPTED
06-17-00075-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/4/2018 3:36 PM
DEBBIE AUTREY
CLERK

No. 06-17-00075-CV

_____

In the Sixth Court of Appeals
at Texarkana, Texas

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

1/5/2018 1:30:00 PM

DEBBIE AUTREY
Clerk

_____

The City of Wolfe City, Texas, *Appellant*,

v.

American Safety Casualty Insurance Company, *Appellee*.

_____

# Amended Reply Brief of Appellant

# the City of Wolfe City, Texas

_____

Daniel W. Ray
Texas Bar No. 24046685
SCOTT, RAY & SULLIVAN, PLLC
2608 Stonewall Street
Post Office Box 1353
Greenville, Texas 75403-1353
Tel. (903) 454-0044
Fax (903) 454-1514
Daniel@scottraylaw.com
ATTORNEY FOR APPELLANT,
THE CITY OF WOLFE CITY,
TEXAS

## TABLE OF CONTENTS

Table of Contents .......................................................................... 2

Index of Authorities ...................................................................... 4

Arguments.................................................................................... 5

1. The City does not have the burden to prove ASCIC's defense of "Design Defect" under the no-evidence MSJ standard. ............. 5

    A. The correct no-evidence MSJ standard. ................................. 5

    B. The City carried its burden under the correct standard. ...... 6

    C. ASCIC attempts to modify the no-evidence MSJ standard... 7

2. ASCIC failed to prove the design-defect defense in its traditional MSJ.................................................................................................. 9

    A. The standard of proof for a design-defect defense. .............. 10

    B. ASCIC's evidence of a design-defect falls short of the standard.................................................................................. 10

3. The terms of the bond, and the contract it secures, controls ASCIC's liability. ..................................................................... 11

    A. The AMR system was not an acceptable punch list item. .. 11

    B. ASCIC was responsible as a surety for punch list items..... 12

    C. Change Order No. 2 was not a confirmation of substantial completion. ............................................................................ 13

4. The City could not have objected to the certificate of substantial completion within the contractual time-frame because Hayter acted fraudulently or in bad faith. .......................................... 14

5. The Trial Court contemplated that additional evidence would be discovered after the hearing on ASCIC's motions for summary judgment. ............................................................................... 16

Conclusion ................................................................................. 17

Certificate of Compliance............................................................ 19

Certificate of Service.................................................................. 19

# INDEX OF AUTHORITIES

## CASES

*Barraza v. Eureka Co.*, 25 S.W.3d 225 (Tex. App.—El Paso 2000, pet. denied) ..................... 9

*Bayshore Constructors, Inc. v. S. Montgomery County Mun. Util. Dist.*543 S.W.2d 898, 901 02 (Tex. Civ. App.—Beaumont 1976), *writ ref'd n.r.e.* (Mar. 30, 1977) ............................. 12

*Blackard v. Fairview Farms Land Co., Ltd.*, 346 S.W.3d 861 (Tex. App.—Dallas 2011, no pet.) ....................................... 5

*City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979) ............................................................ 9

*Foreman v. Whitty*, 392 S.W.3d 265 (Tex. App.—San Antonio 2012, no pet.) ................................................. 9

*Maguire Oil Co. v. City of Hous.*, 69 S.W.3d 350 (Tex. App.—Texarkana 2002, pet. denied) ................................ 6

*Montgomery v. Kennedy*, 669 S.W.2d 309 (Tex. 1984) .................. 9

## RULES

Tex. R. Civ. P. 166a(i) .................................................... 5

## OTHER AUTHORITIES

4A Bruner & O'Connor Construction Law § 12:46................... 8, 10

## Arguments

To be as brief as possible, the City incorporates in this reply all the arguments put forth in the City's Brief. The City further shows this Court the following:

**1. The City does not have the burden to prove ASCIC's defense of "Design-Defect" under the no-evidence MSJ standard.**

In its effort to skirt liability on the performance bond, the recurring theme of American Safety Casualty Insurance Company's ("ASCIC" or "Appellee") brief is to suggest that McKinney & McMillen ("M&M"), the general contractor, is not liable because of an alleged "Design-Defect" in the fixed-based automatic meter-reading collection system ("AMR system"). In doing so, ASCIC improperly shifts to the City the burden to prove ASCIC's defense of a design defect.

**A. The correct no-evidence MSJ standard.**

The no-evidence MSJ standard states that a "court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." Tex. R. Civ. P. 166a(i). Courts have interpreted this standard to require the nonmovant to produce only more than a 'scintilla of evidence," and the evidence must be read "in a light most favorable to the nonmovant"—here the City. *See Blackard v.*

*Fairview Farms Land Co., Ltd.*, 346 S.W.3d 861, 868 (Tex. App.—Dallas 2011, no pet.). "More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Id.* Further, the nonmovant is only required to present evidence on the elements on the elements the movant challenges. *See Maguire Oil Co. v. City of Hous.*, 69 S.W.3d 350, 357 (Tex. App.—Texarkana 2002, pet. denied). The only element ASCIC challenged in its no-evidence motion is whether M&M defaulted. (1CR327) ("an essential element of the City's bond claim is that the City must show that the contractor, M&M, failed to fulfill its duty of performance under the construction contract").

### B. The City carried its burden under the correct standard.

To survive the no-evidence MSJ, the City needed to provide only "more than a scintilla of evidence" that M&M defaulted on the Construction contract. The City met this requirement when it provided evidence of M&M's responsibilities under the Contract and M&M's failure to comply with those terms. (1CR668.) M&M failed to comply with the terms of the Contract when it did not deliver a fully functional system (1) as admitted by George McKinney, a representative of M&M, in his

deposition (1CR697, 706); (2) as admitted to by M&M when it admitted it stopped work before this lawsuit was filed (1CR710-6); and (3) as admitted to by M&M in its response to Wolfe City's Demand for Contract Performance when it refused to continue working on the project. (1CR724.) This put M&M in default of the construction contract, which makes ASCIC liable under the performance bond. Because there is more than a scintilla of evidence that M&M was in default, the no-evidence MSJ was erroneous. (*See* Appellant's Br. at 27-30.)

## C.    ASCIC attempts to modify the no-evidence MSJ standard.

Because the City provided sufficient evidence to surpass the "more than a scintilla" threshold when the evidence is viewed in a "light most favorable to the nonmovant," ASCIC attempts to shift to the City the burden to prove that the City's problems were **NOT** due to a design-defect. Thus, ASCIC attempts to modify the no-evidence MSJ standard.

ASCIC asserts: "M&M's responsibility is solely for construction or installation defects. If the City's problems arose from a design defect in Zenner's or Datamatic's components, then M&M did not default on the construction contract." (Appellee Br. at 16.) Further, "M&M could not have defaulted on the construction contract if the City's problems

resulted from a design defect rather than a construction or installation defect." (*Id.* at 22.)

After shifting the burden of proof for a no-evidence MSJ, ASCIC then claims that the City falls short: "[t]hus, for the City to raise a genuine fact issue on ASCIC's 'no evidence' motion, it had to offer some evidence that the City's failure to receive a fully functional system resulted from M&M's default, *and not from a defect* in the Datamatic components that Hayter specified for the system." (*Id.* at 25) (emphasis added.)

Existence of a design defect is a defense, which is ASCIC's burden to prove. "[A] surety is entitled to the protection of the principal's 'contract defenses.' One such defense is the owner's control over preparation and issuance of detailed design documents with design inadequacies." 4A Bruner & O'Connor Construction Law § 12:46. In short, existence of a design defect is a contract defense belonging to M&M. ASCIC can urge that defense, but also has the burden of proof on the defense.

Because ASCIC carries the burden of proof for this defense, it cannot shift this burden to the City in a no-evidence MSJ. It is not proper

in a no-evidence MSJ to raise a legal issue on which the movant has the burden of proof. A movant cannot file a no-evidence motion for summary judgment on a claim or defense on which he has the burden of proof at trial. *Foreman v. Whitty*, 392 S.W.3d 265, 279 (Tex. App.—San Antonio 2012, no pet.); *See also, e.g., Barraza v. Eureka Co.*, 25 S.W.3d 225, 231 (Tex. App.—El Paso 2000, pet. denied) (party may not urge no-evidence summary judgment on claims or defenses on which it has burden of proof).

In sum, the City met the actual no-evidence threshold and was not required to meet the threshold of providing evidence to disprove ASCIC's design-defect defense.

## 2. ASCIC failed to prove the design-defect defense in its traditional MSJ.

The burden that ASCIC attempts to require of the City in the no-evidence MSJ is a burden ASCIC itself does not meet in its traditional MSJ. "Defendants moving for summary judgment must expressly present and conclusively prove all essential elements of their defense as a matter of law; there can be no genuine issues of material fact." *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984) (*citing City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979)).

## A. The standard of proof for a design-defect defense.

Bruner & O'Connor's treatise on Construction Law sets forth the standard ASCIC must prove for its design-defect defense:

> "[W]here the owner issues *detailed design documents found to be defective*, fails to disclose critical information to the contractor, or maintains control over the contractor's construction methods, the contractor's nonperformance will be excused."

4A Bruner & O'Connor Construction Law § 12:46 (emphasis added).

ASCIC cites the same treatise in putting forth its design-defect defense. (Appellee Br. at 23.) For ASCIC to claim the design-defect defense, it had the burden to prove that detailed design documents provided by the City or its agent are defective and, thus, are the cause of the nonfunctioning AMR system.

## B. ASCIC's evidence of a design-defect falls short of the standard.

ASCIC's evidence of an alleged design defect amounts to the City selecting the type of water meter and requiring it to be supplied by an experienced qualified vendor—none of which comprise "*detailed design documents that have been found to be defective*." ASCIC offered evidence that the Engineer specified the type of meters for the project. (1CR328.) The contractor could use one of five brands of water meters: Master Meter, Itron, Neptune, Badger, or Infinity. (Appellee Br. at 3, *citing*

1CR135.) ASCIC further points to evidence that the engineer required the AMR system to be "supplied by an experienced, qualified, vendor." (*Id.*) That is where the evidence stops. ASCIC did not present any evidence of "***detailed design documents that were found to be defective***." Because ASCIC did not conclusively its design-defect defense, it was error to grant ASCIC's traditional MSJ.

### 3. The terms of the bond, and the contract it secures, controls ASCIC's liability.

ASCIC attempts to convince this Court that freedom of contract does not exist and it is entitled to rely on a certificate of substantial completion, regardless of how it was obtained and regardless of the terms of the contract.

#### A. The AMR system was not an acceptable punch list item.

ASCIC's erroneously argues that the AMR System was a punch list item. However, the Contract explicitly states that the punch list must not contain any major deficiencies. CR 411-12, 585. In this case, the entire purpose of the AMR System was so that the City could read the meters remotely, but this could not occur because the AMR System was not functional, as indicated on the punch list. *See* CR 412-13. Because the AMR System could not fulfil its intended purpose and was a major

component of the overall project, it follows that the indication of the AMR System on the punch list as a deficiency was contrary to the explicit terms of the Contract and therefore not an actual punch list item pursuant to the terms of the Contract. Nevertheless, pursuant to the Contract, ASCIC was responsible for deficient items which were not corrected within 30 days after being noted on the punch list.

### B. ASCIC was responsible as a surety for punch list items.

A surety can be responsible for punch list items. Indeed, in *Bayshore Constructors*, the contract specified that "[t]he Contractor shall remedy any defects in the work and pay for any damage to other work resulting therefrom, which shall appear within a period of one (1) year from the date of final acceptance of the work unless a longer period is specified." *Bayshore Constructors, Inc. v. S. Montgomery County Mun. Util. Dist.*, 543 S.W.2d 898, 902 (Tex. Civ. App.—Beaumont 1976, writ ref'd n.r.e.). The Court interpreted the contract, and the bond, to include the one year warranty period. *Id.*

In this case, the Contract specified that all punch list items shall be remedied within 30 days from the date of the certificate of substantial completion. CR 418-19. Even though completion of the punch list items

did not occur, ASCIC argues that it should not be responsible for punch list items because the City is provided a remedy through warranty. ASCIC's argument is in opposition with *Bayshore Constructors*, which held a performance bond open under a one year warranty period. Furthermore, in this case, the contract reinstituted liquidated damages in the event the punch list items were not remedied within the allotted time-frame. CR 418-19. In other words, there was no warranty period if the punch list items were not remedied within 30 days, and it follows that ASCIC contemplated liability under the terms of the contract beyond the issuance of substantial completion when it issued the bond. Therefore, because liquidated damages were reinstituted after the issuance of substantial completion, ASCIC argument, that punch list items should be covered under warranty, fails.

### C. Change Order No. 2 was not a confirmation of substantial completion.

ASCIC also erroneously argues that the City confirmed substantial completion through Change Order No. 2. ASCIC's argument is erroneous because the date contained on Change Order No. 2 was an **estimated completion date**. Change orders are a routine practice in the construction industry because the scope of any given project typically changes over the

life of the project. It follows that if a project is to change in scope, the time of completion will also change, hence the necessity to input a date of substantial completion (time of performance) on the change order. For instance, in this case, Change Order No. 1 contained the date of October 13, 2012. Change Order No. 1 did not confirm that the project was completed on October 13, 2012, it merely adjusted the time of performance based on the change of scope. *See* CR 1464-65. If the date on Change Order No. 1 was merely a time of performance, then it follows that Change Order No. 2, which contained a different date, merely adjusted the time of performance from October 13, 2012 to March 21, 2013 to account for the change of scope in the project. Even if Change Order No. 2 constitutes an agreement that confirmed substantial completion, the City is excused because it was obtain fraudulently or in bad faith.

**4.      The City could not have objected to the certificate of substantial completion within the contractual time-frame because Hayter acted fraudulently or in bad faith.**

ASCIC argues that the City did not comply with the requirements to contest Hayter's certificate of substantial completion. ASCIC further argues that the City offered no summary judgment evidence that Hayter

acted fraudulently or in bad faith. Simply, the former fails because of the latter fails. The evidence was very clear from the engineer's deposition that he acted intentionally in opposition with the terms of the Contract and in opposition with his duties as a professional engineer to the detriment of the City. CR 415-17, 531, 537-40. ASCIC attempts to downplay his actions as mere negligent acts within an engineer's discretion. However, as noted by the City's expert, Hayter's actions were contrary to that of a licensed professional engineer in Texas. *See* CR 1462-64. Even if the testimony of the City's expert is not admissible as newly discovered evidence, ASCIC cannot deny that Hayter's actions were intentional conduct to the detriment of the City, which meets the requirements for gross negligence, gross mistake, and/or bad faith.

It follows that since the evidentiary standard for summary judgment indicates that Hayter acted in bad faith to the City's detriment, the City would have never known whether to contest Hayter's certificate of substantial completion within the contractual time frame. Hayter's admission of its actions certainly were not volunteered within 30 days after substantial completion. Indeed, only through the deposition of Mike Tibbets did the City confirm the scope of the engineer's betrayal. *See* CR

760-61. Further, it is pointless for ASCIC to argue that the City did not contest Hayter's issuance of the certificate of substantial completion. If this Court holds the substantial completion valid, there is no need to consider this point, and if this Court holds the certificate invalid due to fraud, gross mistake, or bad faith, as the City contends, then ASCIC's argument collapses because there would have been no valid certificate for the City to contest.

### 5. The Trial Court contemplated that additional evidence would be discovered after the hearing on ASCIC's motions for summary judgment.

Although the issue of newly discovered evidence has been debated at great length between Appellant and Appellee, when considering whether the Trial Court abused its discretion in denying the City's Motion for Reconsideration, it is important to note that the Trail Court contemplated that there would be newly discovered evidence after ASCIC's hearing on its motions for summary judgment. The morning of and prior to the hearing, the Trial Court signed an agreed order, which extended the discovery deadline. CR 780-81. The principle reason for this order was to extend deadlines due to the addition of Hayter as a named defendant only 11 days prior to ASCIC's hearing.

## Conclusion

In its no-evidence MSJ, ASCIC improperly attempted to increase the no-evidence MSJ threshold (which the City met) by shifting to the City the burden to prove ASCIC's "Design-Defect" defense and then claiming that the City falls short of the shifted burden. In its traditional MSJ, ASCIC fell short of the standard to conclusively prove its "Design-Defect" defense.

Further, ASCIC should be held accountable to the terms of its bond and the contract that it secured. Even though the AMR System was not a contractual punch list item, the Contract explicitly required contract damages to be reinstated if any deficiency on the punch list was not corrected within 30 days. In addition, ASCIC's argument that Change Order No. 2 confirmed substantial completion is erroneous and against industry practice because the change in date simply noted a change in time of performance. The City did not agree to actual substantial completion via Change Order No. 2, and it could not have contested Hayter's certificate of substantial completion because it had no knowledge of Hayter's bad faith and/or fraudulent actions until the deposition of its engineer. Because bad faith or fraudulent actions are

frequently denied until the bitter end, the Trial Court should have contemplated that newly discovered evidence would be forthcoming, especially since it signed an order extending the discovery period the very morning of ASCIC's hearing on its motions for summary judgment.

Respectfully Submitted,

/s/ Daniel W. Ray_____
**Daniel W. Ray**
Texas Bar No. 24046685
Daniel@scottraylaw.com
Scott, Ray & Sullivan, PLLC
P.O. Box 1353
2608 Stonewall Street
Greenville, Texas 75403
Tel: (903) 454-0044
Fax: (903) 454-1514
**ATTORNEY FOR APPELLANT THE CITY OF WOLFE CITY, TEXAS**

## CERTIFICATE OF COMPLIANCE

This brief was prepared using Microsoft Word in Century font with 14-point type. This brief contains 2,717 words, not counting the sections excluded by Tex. R. App. P. 9.4(i)(1).

/s/ Daniel W. Ray_____
Daniel W. Ray

## CERTIFICATE OF SERVICE

On January 4, 2018, a copy of this brief was served through efileTexas.gov on all counsel, as indicated below:

James D. Cupples
Texas Bar No. 05252300
CUPPLES & ASSOCIATES, PLLC
700 Gemini Street #200
Houston, Texas 77058
Tel. (281) 218-8888
Fax (281) 218-8788
Cupplesjd@comcast.net

Byron C. Keeling
State Bar No. 11157980
KEELING & DOWNES, P.C.
bck@keelingdownes.com
1500 McGowen, Suite 220
Houston, Texas 77004
Tel (832) 214-9900
Fax (832) 214-9908

/s/ Daniel W. Ray_____
Daniel W. Ray